FILED
2006 Jun-06  PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

SAMUEL DEMETRIUS BOLTON,
                    Movant

v.                                          CRIMINAL ACTION NO. CR 03-317-S
                                            CIVIL ACTION NO. CV 04-J-8040-S

UNITED STATES OF AMERICA,
                    Respondent

## MEMORANDUM OPINION

This is a motion to vacate, set aside, or correct a sentence, brought by a federal prisoner, pursuant to 28 U.S.C. §2255. The movant, Samuel Demetrius Bolton, was convicted in this court on August 28, 2003, on his plea of guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He was sentenced on December 18, 2003, to a term of imprisonment for 200 months, to run consecutively to his federal imprisonment pursuant to the judgment in the Northern District of Alabama, CR 91-AR-0258-S. Movant did not appeal his conviction or sentence within the prescribed 10-day period. However, on  March 31, 2004, movant filed a *pro se* notice of appeal, in which he requested permission to proceed *in forma pauperis* and for appointment of new counsel. In an order dated April 14, 2004, the district court denied movant's request on the

1

basis that it lacked jurisdiction, given the tardiness of movant's appeal notice.

The district court's ruling was later affirmed by the Eleventh Circuit on April 29, 2004, which denied movant's appeal, *sua sponte,* for lack of jurisdiction.

On December 13, 2004, movant timely filed the *habeas* petition that is now before the court.

Movant remains in custody at this time.

In support of his motion to vacate, Bolton claims that his attorney was constitutionally ineffective because (1) he did not file a timely notice of appeal and (2) he did not interpose an *Apprendi* objection at sentencing to the court's decision to include as a predicate offense under the Armed Career Criminal Act (ACCA) movant's prior juvenile conviction. Movant also alleges that the court imposed an illegal sentence by including certain guideline enhancements in violation of *Blakely.*

In response to the court's order to show cause, the respondent has filed an answer in which it maintains that the motion is due to be denied because the claims are without merit. By order of the court, the parties were advised that the respondent's answer would be treated as a motion for summary dismissal. The movant was advised that to the extent the respondent seeks summary disposition, he may wish to offer affidavits and other evidence establishing facts to rebut those

defenses. Movant was given 20 days to supply such evidence and legal argument he had with regard to whether the motion to vacate is subject to summary disposition. The movant has filed a reply.

## INEFFECTIVE ASSISTANCE AND THE NOTICE OF APPEAL

In his first assignment of error, movant contends that he received ineffective assistance of counsel when his attorney failed to file a timely notice of appeal. Specifically, movant contends that he wanted to file an appeal of the district court's decision to include his prior convictions in sentencing him under the Armed Career Criminal Act (ACCA) 18 U.S.C. § 924(e)(1), because he had not been adjudicated as an adult.[1] Motion at 3. While he noted that his attorney did object[2] at sentencing, movant argues that his attorney thereafter failed to appeal, and that, in light of objections and comments made at sentencing, counsel should have realized his desire to appeal this issue. Motion at 5. Movant also maintains that he requested that his attorney appeal this issue, although movant fails to state in his motion when he made such a request. Motion at 3. The respondent has

---

[1] Information contained in the Presentence Investigation report (PSI) and in related documents reflect that, despite being 19 years old, movant was adjudicated as an adult in case nos. CR-91-AR-0258 and CC 92-889. Movant's third conviction was a juvenile adjudication for Attempted Murder that involved the use of a firearm.

[2] Defense counsel's objection went only to the juvenile adjudication (case no. JU-89-54001).

submitted an affidavit of counsel for defendant in which counsel states:

> After the sentencing, the undersigned received a telephone call from Bolton. Bolton asked 'generally' what the undersigned thought his chances would be if Bolton appealed his sentence. The undersigned explained the waiver portion of the plea agreement and exceptions to that waiver. The undersigned further explained that the Court sentenced Bolton within the statutory maximum and within the guidelines sentencing range and that he did not see any obvious grounds for appeal there.
>
> The undersigned went further and mentioned that if Bolton felt the undersigned had provided ineffective assistance of counsel, that this was an exception to the waiver of appeal. The undersigned did recommend however that if Bolton wanted to pursue that option, he might consider other representation in that the undersigned could not with good conscience file such a claim against himself. Not that the undersigned believed he had provided ineffective assistance of counsel, but in an effort to be 'effective' wanted to mention every possible option available to Bolton.
>
> The undersigned did not hear from Bolton again concerning this matter until the undersigned received information that Bolton had filed for an appeal pro se. Bolton never instructed the undersigned to file an appeal on his behalf.

Davis Aff. at 2.

Movant has filed three affidavits, two of which were not signed and sworn to before a notary public. A third affidavit was executed before a notary public. It is by a Keisha Hinson, ostensibly movant's wife's best friend. Movant's Reply at 2. It simply says, "I Keisha Hinson witnessed Samuel Bolton advise attorney Kevin (sic) Davis to file an appeal on his behalf on December 19, 2003 at the

Hugo Black Courthouse in Birmingham, Alabama."[3]  At some point prior to the running of the appeal time,[4] a conversation did take place between the movant and his attorney regarding filing a notice of appeal. The affidavit of Hinson and the affidavit of movant's attorney do not contradict each other. The fact that Hinson heard movant tell counsel to appeal on December 19, 2003, does not exclude that movant had a telephone conversation with attorney Davis and the subsequent conversation regarding the issue of appeal. Nor does Hinson's affidavit contradict Davis' that he did not hear from movant again regarding the appeal until he received information that movant had filed an appeal *pro se.*

The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The Court elaborated:

---

[3]The actual sentencing hearing took place December 17, 2003, and the Judgment was signed on December 18, 2003. The court is unaware of movant being at the federal courthouse on December 19, 2003. The affiant may have meant the day of the sentencing hearing, but misstated the date.

[4]That this was prior to the running of the 10-day appeal period is clear from attorney Davis' statement to movant, that if movant wanted to proceed with an appeal on the ground of ineffective assistance of counsel, movant would need new appeal counsel.

> A convicted defendant's claim that counsel's assistance was so
> defective as to require reversal of a conviction or death sentence has
> two components.  First, the defendant must show that counsel's
> performance was deficient.  This requires showing that counsel made
> errors so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so serious
> as to deprive the defendant of a fair trial, a trial whose result is
> reliable.

*Strickland*, 466 U.S. at 687.  "Because the [petitioner] must prove both deficiency

and prejudice, a [petitioner's] failure to prove either will be fatal to his claim."

*Johnson v. Scott,* 68 F.3d 106, 109 (5th Cir. 1995).

Under the *Strickland* test, the petitioner must initially show that counsel's

representation fell below an "objective standard of reasonableness."  *Strickland*,

466 U.S. at 688.  "While it need not be errorless, counsel's advice 'must be within

the realm of competence demanded of attorneys representing criminal

defendants.'" *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir.1993)(*quoting Stano*

*v. Dugger*, 921 F.2d 1125, 1151 (11th Cir.)(en banc), *cert. denied*, 502 U.S. 835

(1991)).  In making such an evaluation, "the court should recognize that counsel is

strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment."  *Strickland*, 466

U.S. at 690.  The effectiveness or ineffectiveness of counsel must be evaluated by

consideration of the totality of the circumstances.  *Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir.1983), *cert. denied,* 467 U.S. 1219 (1984).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice.  Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice.  *Strickland,* 466 U.S. at 691-92.  In order to establish "prejudice, [a petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Williams v. Taylor,* 529 U.S. 362, 391, 120 S.Ct. 1495, 1511-1512 (2000).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  *Strickland,* 466 U.S. at 694.  Furthermore, in addition to showing that the outcome would have been different, a petitioner must prove that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair." *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir.1994)(*citing Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 844 (1993)).  In other words, a "counsel's unprofessional errors [must] so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict suspect." *Fretwell,* 506 U.S. at 369, 113 S.Ct. at 842.  "Unreliability or unfairness does not

result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Fretwell*, 113 S.Ct. at 844.

In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366 (1985), the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel," and that "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 58-59, 106 S. Ct. at 370-71.  See also *United States v. Pease*, 240 F.3d 938 (11th Cir.2001).

Movant relies on *Roe v. Flores-Ortega,* 528 U.S. 470, 120 S.Ct. 1029 (2000), in support of his argument that counsel was ineffective in not filing a notice of appeal. The Court noted that before it could answer that question, an antecedent question would first have to be answered: Whether counsel in fact consulted with the defendant about an appeal. *Id.* at 478. Under the facts of the instant case, *Flores-Ortega* lends no support to movant's claim. The statement that a witness heard movant advise his attorney to file an appeal at the time of sentencing does not exclude the telephone conversation described by attorney Davis. In that telephone conversation movant's counsel explained the waiver

8

portion of the plea agreement and the exceptions to the waiver. He further explained that movant was sentenced within the statutory maximum and within the guidelines sentencing  range and that he did not see any obvious grounds for appeal. However, counsel went further and explained to movant that he had not waived his right to appeal based on the ground of ineffective assistance of counsel, but that if movant wanted to pursue that option, he should consider other representation. Davis Aff. at 2. Additionally at the time of sentencing, movant was also advised by the court of his right to appeal within ten days if he believed the guidelines had been misapplied or the sentence was otherwise in violation of the law. He was advised by the court of his right to proceed with an appeal *in forma pauperis* and for appointment of counsel on appeal. Sentencing Transcript at 10. The movant has not disputed that he did not contact his attorney regarding his desire to appeal after the telephone conversation described by Davis. The court cannot find anything *unreasonable* about counsel's advice to movant within the allowable period for appeal, and this claim of the motion is due to be **DENIED.**

## INEFFECTIVE ASSISTANCE, *APPRENDI* AND THE ACCA

Movant next seeks habeas relief on the basis that his attorney rendered ineffective assistance by failing to interpose an objection to the district court's

decision to increase his sentence by using his prior convictions[5] as predicate

offenses under the ACCA. Movant's argument in support of this contention is

two-pronged.  First, he contends that under the principles set forth in *Apprendi v.*

*New Jersey,* 530 U.S. 466 (2000), and other related cases, his prior convictions

may be used to increase his punishment only if proven to a jury beyond a

reasonable doubt. Movant points out that the district court employed a lesser

standard (preponderance of the evidence) in determining the applicability of his

prior convictions under the ACCA, thus violating his constitutional rights.

Secondly, movant claims that because the law denies trial by jury to juvenile

offenders, *Apprendi* prohibits the use of his prior juvenile adjudication for

Attempted Murder as a predicate offense to increase punishment under the ACCA

as well.

     The first issue raised by movant was addressed by the Eleventh Circuit in

*United States v. Miles,* 290 F.3d 1341, 1348 (11th Cir. 2002). Like movant, the

defendant in *Miles* argued that his life sentence imposed pursuant to ACCA [18

U.S.C. § 924(e)(1)] violated *Apprendi* in part due to the fact that the jury had not

been required to find that he had three prior felony convictions. The Eleventh

---

[5]Because of the somewhat confusing arguments advanced in the first and third paragraphs
of movant's second claim (motion at 6), the court shall assume that movant challenges the
inclusion of all his convictions, juvenile and adult.

Circuit stated:

> Next, Miles argues that his life sentence under section 924(e) violated
> the principles set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 120
> S.Ct. 2348, 147 L.Ed.2d 435 (2000), because Count Ten of the
> indictment failed to allege, and the jury was not required to find, that
> he had three prior violent felony convictions. We reject Miles'
> *Apprendi* claim. Because Miles raised the argument under *Apprendi*
> at sentencing, he made a timely constitutional objection that we
> review *de novo. United States v. Candelario,* 240 F.3d 1300, 1303-06
> (11th Cir.2000), *cert. denied,* 533 U.S. 922, 121 S.Ct. 2535, 150
> L.Ed.2d 705 (2001). The Supreme Court established in *Almendarez-
> Torres v. United States* that a defendant's prior conviction is merely a
> sentencing factor that does not have to be submitted to the jury and
> proved beyond a reasonable doubt. 523 U.S. 224, 247, 118 S.Ct.
> 1219, 1233, 140 L.Ed.2d 350 (1998). The Court subsequently held
> that "[o]ther than the fact of a prior conviction, any fact that increases
> the penalty for a crime beyond the prescribed statutory maximum
> must be submitted to a jury, and proved beyond a reasonable doubt."
> *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362-63. The Court also
> stated that "we need not revisit [*Almendarez-Torres*] for purposes of
> our decision today to treat the case as a narrow exception to the
> general rule····" *Id.* After the Supreme Court decided *Apprendi,* we
> considered its effect on *Almendarez-Torres* and held that
> "*Almendarez-Torres* remains the law until the Supreme Court
> determines that *Almendarez-Torres* is not controlling precedent."
> *United States v. Guadamuz-Solis,* 232 F.3d 1363, 1363 (11th Cir.2000).
> Thus, we find that the district court did not violate *Apprendi* in
> considering Miles' prior convictions.

*U. S. v. Miles* 290 F.3d 1341, 1348 (11th Cir. 2002).

The same conclusion pertains to the case at bar. Movant's sentence was

enhanced because his prior record included three convictions, two adult and one

juvenile, which qualified as predicate offenses under the ACCA. *See* Sentencing

11

Transcript at 4. At the time of sentencing, the law did not require the court to submit movant's prior convictions to a jury or to use anything more than a "preponderance of the evidence" standard in applying his criminal history.  That law still applies. *See United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005).

The court likewise finds defendant's second argument, that *Apprendi* prohibits the court from using a juvenile conviction to enhance a sentence under ACCA, to be without merit. The Eleventh Circuit Court of Appeals dealt with this precise issue in *United States v. Burge,* 407 F.3d 1183, 1187-89 (11th Cir. 2005). The Eleventh Circuit discussed the Ninth Circuit's opinion in *United States v. Tighe,* 266 F.3d 1187 (9th Cir. 2001), upon which movant seems to rely, stating:

> Since *Tighe,* the majority of courts have followed the *Tighe* dissent: 'If juvenile adjudications are constitutionally sound according to the more limited set of rights afforded in juvenile proceedings, they may be used to increase a defendant's sentence for a later crime (citations omitted)....This issue is one of first impression in our circuit.
>
> In *Smalley*, the Eighth Circuit stated that the Ninth Circuit's interpretation was too strict because: "We think that while the Court [in *Apprendi*] established what constitutes sufficient procedural safeguards (a right to jury trial and proof beyond a reasonable doubt), and what does not (judge-made findings under a lesser standard of proof), the Court did not take a position on possibilities that lie in between these two poles." *Smalley*, 294 F.3d at 1032. Juvenile adjudications, where juvenile defendants have the right to notice, the right to counsel, the right to confront and cross-examine witnesses, the privilege against self-incrimination and the right to a finding of guilt beyond a reasonable doubt,  *see McKeiver v. Pennsylvania,* 403 U.S. 528, 533, 91 S.Ct. 1976, 1980, 29 L.Ed.2d 647 (1971) (setting forth

12

the constitutional requirements of a state juvenile proceeding), provide
more than sufficient safeguards to ensure the reliability that *Apprendi*
requires and, therefore, may be considered under the ACCA. *Smalley,*
294 F.3d 1033. In *Jones*, the Third Circuit agreed with *Smalley* and
stated that "[l]ike the *Smalley* court, we find nothing in *Apprendi* or
*Jones,* two cases relied upon by the *Tighe* court and [the defendant] on
this appeal, that requires us to hold that prior nonjury juvenile
adjudications that afforded all required due process safeguards cannot
be used to enhance a sentence under the ACCA." *Jones,* 332 F.3d at
696; *see Hitt,* 273 Kan. at 235, 42 P.3d at 740 (stating that although
*Apprendi* spoke of procedural safeguards attached to a prior
conviction, "[i]t did not specify *all* procedural safeguards nor did it
require certain *crucial* procedural safeguards"). Thus, the Third
Circuit held that "[a] prior nonjury juvenile adjudication that was
afforded all constitutionally-required procedural safeguards can
properly be characterized as a prior conviction for *Apprendi*
purposes." *Jones,* 332 F.3d at 696.

　　　In the present case, the district court found the Third Circuit's
*Jones* decision more persuasive than *Tighe* and applied Burge's
juvenile adjudication to the ACCA. After reviewing the record, we
conclude that this application was correct. We base our holding on the
reasoning of our sister circuits in *Smalley* and *Jones.*

*Burge*, 407 F.3d at 1190. For this reason, movant's second part of his motion is due

to be **DENIED.**

## APPLICATION OF GUIDELINES SENTENCING *ENHANCEMENTS AND*

## *BLAKELY v. WASHINGTON*

In the third part of the motion, movant seeks habeas relief on the grounds

that the district court sentenced him in violation of *Blakely v. Washington,* 542 U.S.

296, 124 S.Ct. 2531 (2004), by including in its sentencing calculus 7 levels for

13

discharging a firearm, 4 levels for inflicting serious bodily injury and 2 levels for

restraint of the victim. These enhancement, movant argues, should not have been

considered, as they were never admitted by him at his plea. Motion at 10-11.[6] This

is the first time movant has raised this sentencing issue. Claims that are not

presented on direct appeal usually will not be entertained under §2255. *See Reed v.

Farley*, 512 U.S. 339, 354 (1994) (habeas relief is an extraordinary remedy and will

not be allowed to do service for an appeal). Because movant did not challenge the

validity of his sentence on appeal, he has procedurally defaulted the claim. To

obtain habeas relief where a procedural default occurs, movant must show (1)

cause for his failure to assert the claim in an earlier proceeding, and (2) actual

prejudice from the alleges error. *Bousley v. United States,* 523 U.S. 614, 622

(1998); *United States v. Frady,* 456 U.S. 152, 167-168 (1982). Movant has failed to

do so. When sentence was imposed on movant, case law involving challenges to

the "jury-not-judge" rule were available. *See Apprendi*, 530 U.S at 490 ("Other

than the fact of a prior conviction, any fact that increases the penalty for a crime

---

[6]Movant also asserts that the 200-months custodial sentence that the court imposed violated his Sixth Amendment rights, as it exceeded the 10-year statutory maximum stated in his plea agreement. While the parties' agreement does reflect a statutory maximum sentence of 10 years, in accordance with 18 U.S.C. § 922(g)(1), movant was sentenced as an armed career criminal, pursuant to 18 U.S.C. § 924(e), which provides for a maximum sentence of life imprisonment. Therefore, movant's sentence was within the appropriate statutory range of punishment.

beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt"); *Ring v. Arizona,* 536 U.S. 584 (2002) (requiring jury, not judge, to find aggravating sentencing factors in death penalty cases ). Equally unavailing is a claim premised on the basis that his default should be excused because any attack on his sentence before the advent of *Blakely* would have been futile. Futility, as the Supreme Court explained in *Engle v. Isaac,* "cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" 456 U.S. 107, 130, n. 35 (1982). Movant also cannot use a claim of ineffective assistance of counsel to explain why he failed to pursue the issue on appeal. As discussed above, the blame for not filing a timely appeal belongs to movant, not his attorney. Therefore, because movant has not demonstrated "cause" for his failure to raise the sentencing issue on direct appeal, he is procedurally barred from raising it now.

However, even if movant could overcome the procedural bar, his claim is foreclosed by the Supreme Court decision in *Teague v. Lane,* 489 U.S. 288 (1989). In *Teague*, the Court held that with limited exceptions,[7] new constitutional rules of

---

[7]Movant's case does not implicate either of the two narrow exceptions carved out in *Teague* (i.e. cases where the new rule places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, and cases resulting in "watershed" rules of criminal procedure).

criminal procedure will not be applied to those cases which have become final

before the new rules are announced. *Id.* at 310-11. The Eleventh Circuit applied

*Teague* in *McCoy v. United States,* 266 F.3d 1245, 1258 (11th Cir. 2001) (holding

that the new constitutional rule in *Apprendi* – requiring that any fact, save prior

convictions, must be submitted to a jury and proved beyond a reasonable doubt – to

be procedural, and accordingly, not applied retroactively on collateral review).

Likewise in *Schriro v. Summerlin,* 542 U.S. 348, 124 S.Ct. 2519 (2004), the

Supreme Court concluded that the new requirement in *Ring v. Arizona*, 536 U.S.

584 (2002), – that a jury, not a judge, must find aggravating circumstances

necessary to trigger the death penalty – is a new rule of criminal procedure and

does not apply retroactively in habeas proceedings. So it is with the ruling in

*Blakely.* The Eleventh Circuit in an unpublished opinion opined as follows:

> *Blakely,* like *Ring*, is an application of *Apprendi. Blakely,* like *Ring,* merely
> altered the range of permissible procedures for determining a defendant's
> sentence, requiring that a jury rather than a judge find the essential facts
> bearing on punishment under the Washington State sentencing guidelines.
> Therefore, as the Supreme Court concluded in *Schriro* as to the new "jury-
> not-judge" rule in *Ring,* we conclude that the *Blakely* rule falls squarely
> under the definition of new rules of criminal procedure that do not apply
> retroactively. *See Schriro,* 124 S.Ct. at 2526.

*Chavarry v. United States,* 129 Fed.Appx. 599, – F.3d – (11th Cir. 2005). *See also*

*United States v. Ingram,* 2006 WL 236435 (11th Cir. 2006); *Varela v. United States,*

16

400 F.3d 864, 866-868 (11th Cir. 2005).

In light of theses decisions, the court concludes that because *Blakely* involved a new rule of criminal procedure which was not announced until after movant's case became final, movant cannot now use it in an effort to vacate his sentence. The application of *Blakely* to movant's case is barred by *Teague* as discussed above.  For this reason, movant's third part of his motion is due to be **DENIED.**

An appropriate Oder will be entered **DENYING** movant's motion.

**DONE** and **ORDERED** this the 6th day of June, 2006.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

17